**I. M. ALSIP'S ADMINISTRATOR (E. B. Alsip) et al., Appellants,**

v.

**Oba G. ONSTOTT et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 28, 1955.

Sandidge & Sandidge, Thomas E. Sandidge, Owensboro, for appellants.

David C. Brodie, Owensboro, for appellees.

CAMMACK, Judge.

This appeal is from a judgment in a declaratory judgment proceeding wherein the appellees, Oba G. Onstott and his wife, Minnie Mae Onstott, were found to be entitled to all the royalties accrued under an oil and gas lease on property conveyed to the Onstotts by I. M. Alsip.

In August, 1947, Alsip executed an oil and gas lease to A. W. Ankeny on 130 acres of land which he owned in Daviess County. The lease was for a three year term, and for as long thereafter as oil or gas was produced on the leased premises. It provided for payment of a one-eighth royalty to Alsip, and contained a further provision that if the premises were ever subsequently divided, the lease should nevertheless be treated as one lease and "all royalties accruing hereunder shall be treated as an entirety and shall be divided among, and paid to, such owners in the proportion that the acreage owned by each separate owner bears to the entire leased acreage."

In January, 1948, Alsip conveyed 16 acres of the 130 acre tract to Oba Chapman, and 45 acres to the Onstotts, retaining 69 acres of the original tract. Chapman was given a general warranty deed, but the Onstott deed contained the following provision:

"The above described property is subject to an oil and gas lease executed originally to A. W. Ankeny, which said oil and gas lease expires on August 27, 1950, unless oil and gas, or either of them, is produced from the said lease, and this conveyance is made subject to the said oil and gas lease, and subject to a further reservation to the party of the first part as follows: If the first well drilled under the Ankeny lease is a producer of oil and gas, or either of them, in commercial quantities, then the party of the first part reserved to himself one-half of the royalty payable under the said lease, such reservation to be effective for a period of fifteen years, and cover all wells drilled, including the first well, and at the expiration of the said fifteen year period the parties of the second part, and the survivor of them, his or her heirs, shall then be entitled to all the mineral rights and royalties under the said property. In the event the first well drilled on the said property under the Ankeny lease is a dry hole, or in the event no well is drilled thereunder, and the lease expires or is terminated, then on the happening of either of said contingencies, the parties of the second part, and the survivor of them, his or her heirs, shall be entitled to all of the minerals and the royalties thereon. The intention of the parties is that the party of the first part shall have one-half of the royalty under the Ankeny lease only if the first well drilled thereon is a producing well, and that this one-half of the royalty shall be vested in the first party only for fifteen years, said fifteen years to be calculated from the date of this deed."

Prior to the execution of these deeds, and prior to the Ankeny lease, which had not been recorded when the deeds in question were executed, two dry wells had been drilled on the 16 acre portion conveyed to Chapman, and two dry ones had been drilled on the 69 acre portion retained by Alsip. After the deeds were made, Ankeny assigned his lease. The first well drilled under the Ankeny lease was on the 16 acre tract and was a dry hole. The second well drilled under the lease was on the Onstott tract. The Onstotts contend that it also was a dry hole, but this contention is an issue in this case. In all, eight wells were drilled on the Onstott tract, and it is agreed that all were producing wells except the second, which was dry, and the first, which is in issue. By any standard, the Onstott tract was a productive one.

After the third well on the Onstott tract had been drilled, a dispute arose over the ownership of the royalties, and this action was instituted by Alsip and Chapman to determine the rights of the parties. During the pendency of the action I. M. Alsip died, and the action was revived in the name of his administrator and heirs at law.

The trial court found that the first well drilled on the Onstott tract was not a producer of oil or gas in commercial quantities, and found the Onstotts entitled to all the royalties arising from the production of oil or gas on their tract.

On this appeal, the appellants contend that (1) the court's finding that the first well drilled on the 45 acre tract was a dry hole is flagrantly against the evidence; (2) the Onstotts are estopped by their own conduct from denying that the first well on that tract produced oil in commercial quantities; and (3) even had it been a non-producer they were still entitled to a proportional share of the royalties, due to the terms of the Ankeny lease, which was not modified by the subsequent deeds to Chapman and the Onstotts.

The appellants' third contention is based upon their interpretation of the written lease and deeds. We think the trial court correctly held that the Onstott deed modified the lease provisions relating to proportional royalties in the event of future severances of the 130 acre tract. While the deed was specifically made "subject to the * * * lease," it is clear upon reading it as a whole that this reservation was meant to protect the lessee under the Ankeny lease, and to put the Onstotts on notice that their title would be subject to the

lessee's rights in the property. It is likewise clear that the reservation in the Onstott deed of one-half the royalty payable under the lease was called a further reservation merely because it was a further encumbrance upon the Onstotts' title, and it was not intended to supplement Alsip's royalties under the lease. Hence the trial court correctly held that any interest which the appellants might have in the royalties (which were produced entirely from the Onstott tract), must be derived from the royalty reservation in the Onstott deed. Since that deed contained no reservation in favor of Chapman, he can have no interest in the royalties.

■ Alsip's reservation of royalties on the Onstott tract was expressly conditioned upon the first well being a producer of oil or gas in commercial quantities. The Onstotts contend it is not clear whether the deed refers to the first well drilled on the 45 acre tract, and ask that the ambiguity be resolved against the interest of the appellants, successors in interest to the grantor who drew the deed. We think that the reservation in the deed is not ambiguous so as to require the application of this rule of construction. The deed expressly reserves one-half the royalties from all the wells, "including the first well." It is clear that the reservation must have had reference to the first well on the Onstott tract, since the reservation of royalties therefrom *in the Onstott deed* would otherwise have been useless.

■ The appellants contend that the Onstotts are estopped to deny that the first well on their tract was a producer of oil in commercial quantities. It is true that the oil lease would have expired, by its own terms, had this particular well been a dry hole—since the lease was to expire after three years if no producing well was drilled, and, in fact, no other producing well had been drilled during the three year period of the lease. It is also true that seven other wells were drilled, subsequent to the first, without objection by the Onstotts. While their conduct in this respect might constitute estoppel as against the lessees and their assignees, it is not an estoppel as against the appellants. Hence, the trial court properly considered the factual issue of the well's productivity.

■ We think the court's finding that Onstott well No. 1 was a non-producer is clearly erroneous. The evidence showed that 15 barrels of oil were pumped the first day within two or three hours. It showed that this well, after four and one-half years, is still producing 20 barrels per month. Both Ankeny and the assignees of the oil and gas lease testified that the well was a producer in commercial quantities. It was shown for the appellants that the delay in selling the oil from well No. 1 was due to the isolated location of the well, poor roads during the winter months, and the absence of piping facilities. In addition, Mr. Onstott himself referred to the "second producing well" at a time when only three wells had been drilled. Since well No. 2 was admittedly dry, his reference must have been to well No. 1 and well No. 3 as producing wells. He also testified that it was his opinion that the oil lease was still in effect. It has been pointed out that had well No. 1 been a non-producer, the lease would have terminated, by its terms, long before this litigation arose.

While the Onstotts introduced evidence in support of their contention that well No. 1 was not commercially productive, we think it was productive, and the court below should have so found. His ruling, therefore, on this question was clearly erroneous. CR 52.01.

The judgment against Chapman is affirmed. The judgment against the other appellants is reversed, with directions to set it aside, and for the entry of a judgment in their favor for one-half the accrued royalties.